HEARD NOVEMBER TERM, 1874.

## HAYNSWORTH *vs.* BISCHOFF.

Where an administrator loans money of the estate, taking as security notes of the borrower, and afterwards recovers judgment on the notes, and, at a Sheriff's sale, to enforce the judgment, purchases lands of the judgment debtor, the notes, judgment and Sheriff's conveyance being all in his individual name, the lands in his hands are assets and subject to a trust for the use of those beneficially interested in the estate.

The trust under such circumstances follows the lands into the possession of a purchaser, unless he can protect himself under the defense of purchase for valuable consideration without notice.

A purchaser cannot protect himself under the defense of purchase for valuable consideration without notice where an antecedent indebtedness is the sole consideration of the purchase.

A mortgagee of lands is a purchaser within the meaning of the rule which protects a purchaser for valuable consideration without notice.

It is not necessary that one should acquire the full legal title to entitle him to the protection of the defense of purchase for valuable consideration without notice.

BEFORE TOWNSEND, J., AT DARLINGTON,          TERM, 1873.

Action by W. F. Haynsworth and others, plaintiffs, against Henry Bischoff & Co., and others, defendants.

The facts of the case are as follows :

J. M. McCall was administrator, with the will annexed, of J. L. McCall, deceased. On the 22d of October, 1866, a bill in equity was filed for settlement of the estate of the testator, to which the plaintiffs, as devisees and legatees of the testator and the administrator, were parties. Under the proceedings had in that cause, a final decree was rendered on May 10, 1871, in favor of the plaintiffs, against the administrator for $8,262.87. In the year 1866 the administrator loaned moneys of the estate to W. E. McCall, taking from him his promissory notes as securities for the loans. The notes were afterwards put in suit, and in 1868 judgment was recovered thereon. Execution was issued on the judgment, and on January 6th, 1868, the Sheriff sold, under the execution, a tract of land, the property of the judgment debtor. The administrator was the purchaser, at a price more than sufficient to satisfy his judgment, and he paid the balance of the price, after satisfying his own judgment, by giving to the holder of another judgment against W. E. McCall his note, secured by a mortgage of the land.

The notes of W. E. McCall to the administrator, the judgment thereon and the Sheriff's deed of conveyance were to him, not in his representative character, but as an individual.

After his purchase of the land, J. M. McCall contracted a debt with Henry Bischoff & Co. for goods bought of them, and on the 1st of September, 1869, he gave them his note, payable thirty days after date, for $619.80, the price of the goods. To secure the payment of this note, J. M. McCall, on the 11th of July, 1870, gave to Henry Bischoff & Co. his mortgage of the land he had purchased at Sheriff's sale—the only consideration expressed in the mortgage, besides the nominal consideration of three dollars, being his indebtedness on the note, then past due. The mortgage was recorded on the same day it was given.

Some time after the mortgage was given, Henry Bischoff & Co. commenced action against J. M. McCall on his note to them, and on the 7th of March, 1871, obtained and entered judgment thereon. The mortgaged premises were levied on under the execution and advertised for sale by the Sheriff in June, 1871, and thereupon

W. F. B. Haynsworth and others, plaintiffs, commenced this action against J. M. McCall and Henry Bischoff & Co. and other judgment creditors of J. M. McCall, for injunction to restrain the sale by the Sheriff of the said tract of land, and praying that the same be sold under the decree of the Court and the proceeds applied to the payment of the judgment in favor of the plaintiffs in the bill in equity for settlement of the estate of J. S. McCall, deceased.

Henry Bischoff & Co. were the only defendants who answered the complaint.

The case was referred to a Referee, and at the hearing before him numerous questions of law and fact were presented for his consideration, the principal question being whether Henry Bischoff & Co. were entitled to protection under their mortgage as purchasers for valuable consideration without notice.

The Referee held, *inter alia*, that the trust in favor of the plaintiffs could be shown by parol; that the defendants could not show by parol any consideration for the mortgage, (as forbearance, for instance, which in this case was attempted to be shown,) except that expressed upon its face; that Henry Bischoff & Co. were mortgagees in good faith for valuable consideration and without notice of the trust, but he held that, as a mortgagee by the statute law of this State held only a lien upon the land as security for the payment of his debts, they did not acquire the full legal title, and could not, therefore, be protected under a plea of purchase for valuable consideration without notice. And he declared it as his judgment that the plaintiffs were entitled to the injunction they demanded by their complaint, and to have the land sold and the proceeds applied to the payment and satisfaction of their claims under the judgment in the bill for settlement of the estate of J. S. McCall.

Henry Bischoff & Co. excepted to the report on a number of grounds, presenting for consideration by the Court the same questions of law which the Referee had ruled against them.

His Honor the presiding Judge overruled the exceptions, and made a decree in conformity with the recommendations of the report.

Henry Bischoff & Co. appealed to this Court.

*A. C. Spain*, for appellants, contended that the evidence had not established the alleged trust in favor of the plaintiffs; and, if it

had, the appellants were purchasers for valuable consideration without notice, and should be protected. That forbearance to sue was a valuable consideration, (Perry on Trusts, § 220; 1 Steph., N. P., 255; *Thomas* vs. *Croft,* 2 Rich., 113; *McCelvey* vs. *Noble,* 13 Rich., 330; *Goodman* vs. *Simonds,* 20 How., 370,) and that the Referee had erred when he ruled that it was incompetent for the plaintiffs to shew in this case any consideration for the mortgage except that expressed on its face.— *Garrett* vs. *Sewart,* 1 McC., 514; 1 Phil. Ev., 549; *Hartop* vs. *Hartop,* 17 Ves., 184; *The King* vs. *Scammonden,* 3 T. R., 474; *Buckner* vs. *Ruth,* 13 Rich., 157; 1 Green. Ev., § 304, note 5. And that a *bona fide* mortgagee is a purchaser and entitled to protection.—Perry on Trusts, § 235; *Willoughby* vs. *Willoughby,* 1 T. R., 769; Story Eq., § 1000; *Ledyard* vs. *Butler,* 9 Paige, 132; 1 Hill on Mort., 163, note b.

*T. B. Fraser,* contra, made numerous points, and contended that trust funds, as a general rule, may be followed by the parties interested in them, and no change of the state or form in which they originally existed can divest the property of its trust character.—*McNeil* vs. *Morrow,* Rich. Eq. Cases, 172; Story Eq., §§ 1258-9-60; *Rhame* vs. *Lewis,* 13 Rich. Eq., 269; *Williams* vs. *Hollingsworth,* 1 Strob. Eq., 103. That appellants were not entitled to protection as purchasers for value. An antecedent indebtedness is not a valuable consideration.—*Bassett* vs. *Noseworthy,* 2 Lead. Cases in Eq., 71, 72; *Donaldson* vs. *State Bank,* 1 Dev., 103; *Williams* vs. *Hollingsworth, sup.* The evidence was insufficient to prove that indulgence was a consideration of the mortgage; and, if it had been, it would not have sustained the defense of purchase for value. But whatever may be the rule in England and other States, a mortgagee of real estate in this State is not entitled to the defense of purchase for valuable consideration without notice. To sustain that defense, it is necessary for the purchaser to show that he acquired the legal estate. At common law he does acquire it, but our Act of 1791 converts the mortgage into a mere lien or security for the payment of the debt. There can be no foreclosure in the strict sense of that term. There can only be a decree for the sale of the mortgaged premises.—*Brown* vs. *Wood,* 6 Rich. Eq., 167; *Blake* vs. *Heyward,* Bail. Eq., 221; Perry on Trusts, § 218; Story Eq., § 1503; *Laffan* vs. *Kennedy,* 15 Rich., 257; *Beard* vs. *Williams,* 1 S. C., 324.

April 26, 1875.   The opinion of the Court was delivered by

WILLARD, A. J.   The pleadings are not set forth in the brief, nor is the precise character of the relief demanded by the complaint stated.

It appears that, before the commencement of this suit, defendants were seeking to enforce a judgment recovered upon a note of J. M. McCall, secured by a mortgage executed on lands of which the legal title stood in his name.   It does not appear that defendants were attempting to enforce their mortgage.   The injunction issued in the present action arrested the proceedings of the defendants to enforce their judgment.   A copy of the injunction is not set forth, and it does not appear whether the defendants were restrained by it from asserting and proceeding to enforce their mortgage.

The case has been discussed by all parties as to the questions at issue related to the rights acquired by the defendants under their mortgage, and the questions raised by the present appeal will be considered upon the assumption that the defendants stand before the Court on the strength of their claims as mortgagees.

J. M. McCall was administrator, with the will annexed, of the estate of J. S. McCall, deceased, and as such held funds appertaining to that estate.   The plaintiffs are legatees and devisees, their respective interests in the realized assets being established by a decree to which the administrator was a party.

Plaintiffs allege that the administrator acquired the lands in controversy through the use of the assets of the estate, taking, improperly, the title in his own name, and that the land became by substitution assets of the estate; and they seek to charge the lands accordingly as against the mortgage upon them held by the defendants.

The defendants claim, among other defenses, that, under their mortgage, they are purchasers for a valuable consideration and without notice of any trust or breach of duty on the part of the administrator, and they resist the claims of the plaintiffs to subject the mortgaged premises to their equities.

The first question to be considered is, whether the plaintiffs have an equity as against J. M. McCall to claim the land in controversy as assets of the estate.   The facts bearing on this question, as found by the Referee, are, briefly, as follows:   J. M. McCall, the administrator, loaned to W. E. McCall money of the estate, taking therefor

notes payable to himself individually. He recovered judgment on these notes, and, under that judgment, sold and became the purchaser of the lands in controversy as the estate of the judgment debtor.

The amount of the bid was settled in part by extinguishing J. M. McCall's judgment, and in part by a note of J. M. McCall, secured by a mortgage on the premises intended to satisfy a judgment affecting the premises outstanding in a third person, That need not now be particularly noticed. Title was taken by J. M. McCall in his individual name.

The notes, the judgment and the title to the land being thus in J. M. McCall as an individual and not as administrator, so far as it appeared on the face of the transaction, he possessed an apparent right to sell or morgtage the premises in question. The persons entitled under the will had an equity : First, to demand that the lands thus purchased should be applied to the purposes of the administration as assets, by substitution, of the estate. It was within the power of the administrator to make a loan of the moneys of the estate in hand. Indeed, under the prevailing rule making it the duty of administrators to make interest on the realized assets in his hands, loans producing interest are necessary for the protection of the administrator.

At law, the notes of W. E. McCall were assets of the estate to the extent of rendering the administrator accountable for them under a plea of *plene administravit*, (*Rhame* vs. *Lewis*, 13 Rich. Eq., 269,) inasmuch as they were taken in the due course of the office of administrator ; nor was it material that they should bear evidence on their face that they appertained to the estate. Such evidence might be of importance when the question was that of notice to one dealing with the administrator as the individual owner of such securities, but in other respects they stood on the same footing as chattel property generally.

No question of the propriety of the loan is raised by the plaintiffs, who have the right to its advantages, even if, under the circumstances, is was injudiciously made.—*McNeil* vs. *Morrow*, Rich. Equity Cases, 172.

In equity, the notes represented and stood in the place of the original assets.—*Rhame* vs. *Lewis*, 13 Rich. Eq., 269.

The fact that the action on these notes and the judgment recovered thereon was in the individual name of the administrator

without mention of the official character in which he held them, is quite immaterial in ascertaining who was entitled to the benefit of the recovery. It was consistent with the duty of the administrator that he should prosecute the securities taken for assets of the estate disposed of by him in his own name.—*Rhame* vs. *Lewis*. The judgment was in itself an asset and enured to the benefit of the estate. J. M. McCall having become the purchaser of the lands and taken title in his own name, to the extent that the consideration of such purchase was the money due on the judgment, he became in equity a trustee for the use of the estate. It was, in substance, the ordinary case of a trustee purchasing lands with trust funds and taking title in his own name, whence arises in equity a trust for those entitled beneficially to the trust funds. The fact that the trustee was also administrator does not affect the application of the equitable principles under which a resulting trust is raised; the trust is moulded to subserve the interests of the administration.—*McNeil* vs. *Morrow*, Rich. Eq. Cases, 172.

It is, therefore, clear that, upon the facts found by the Referee, the plaintiffs are entitled as against the administrator to claim that the lands shall be applied in the course of administration as assets of the estate.

The next question is, whether the defendants are entitled to the protection afforded in equity to purchasers for valuable consideration without notice.

The facts bearing on this question are, briefly, as follows: J. M. McCall was indebted to the defendants on his individual account, and for some purpose was induced to give the defendants a mortgage upon the premises in question as security for his note representing such indebtedness.

The objections interposed to the allowance of protection to defendants as purchasers for a valuable consideration without notice are: First, that as mortgagees they are not entitled to such protection; and, second, that they have not paid a valuable consideration.

The Referee finds that they are not chargeable with notice of any equities of the plaintiffs or of any breach of duty on the part of the administrator.

The first point to be considered is, whether one having a lien on lands as mortgagee can claim protection in equity as a purchaser. It is settled in England that he can.—*Willoughby* vs. *Willoughby*,

1 T. R., 763. This rule has been followed in this country.—. *Ledyard* vs. *Butler*, 6 Paige, 132; *Pierce* vs. *Faunce*, 47 Me., 507; *McFarlane* vs. *Griffiths*, 4 Wash. C. C. R., 585.

It is contended, however, by the plaintiffs that the authorities beyond this State are inapplicable as the law stands here; that, by statute, the mortgagee takes nothing in this State but a security for his debt, the mortgagor in possession remaining the owner of the land for all purposes, subject only to the right of the mortgagee to enforce his security by a sale of the land.

The statute law of this State merely follows, in this respect, the doctrines adopted in England and in this country prior to its passage, and conforms the legal idea of a mortgage to that which has obtained in the Courts of equity. The decisions in the English and American Courts of equity asserting the right of a mortgagee to the protection afforded to a purchaser for value and without notice are based upon the idea of the nature of a mortgage and of the right of a mortgagee held by the Courts of equity. Now that the Courts administering equity find the doctrine which they have always maintained in regard to the right of a mortgagee and the nature of a mortgage security sanctioned by the statute law, they find additional reason for adhering to their conclusions as it regards the right of the mortgagee to stand before the Court as a protected purchaser.

The argument on this point urged by the plaintiffs is based upon an erroneous assumption. It is contended that one cannot claim protection as a purchaser in respect of lands unless he holds the legal title. No support is found for this position in the adjudicated cases. The error has probably arisen from confusing the expression "legal right," often used in the cases on this subject, with that of legal title or estate.

The equitable doctrine as to purchasers springs out of the peculiar nature of equity as the administration of a settled rule of conscience. When it is sought to affect a party, or subject his rights or estate to some equity or state of equities, existing primarily between other parties, on the ground that he has acquired some property or right from one bound by such equity, and in whose hands the property or right previous to its transfer was specifically bound by such equity, it is necessary to show that the act of acquiring such property or right ought not in conscience to stand. If the dealing has been fair, and the purchaser has been at cost to

acquire the property or right, not intending or knowing of any injury to result therefrom to a third person, it is clear that a Court that proceeds on the ground of conscience cannot interfere with rights thus obtained. This idea is embraced in the more general proposition, constantly applied in equity, that, when equities are equal, he that has the legal title will be preferred. The expression "title," as just used, in its broadest sense, includes all rights capable of being enjoyed and secured under the law. One holding a legal title to lands is certainly included, but rights amounting to less than the full legal title are equally included within it.

We can find no reason for departing from the current of decisions that has recognized the mortgagee as among those who may claim, in equity, protection as purchasers.

The Referee finds that the defendants have not paid a valuable consideration. It is established that the debt secured by the mortgage was antecedent to the mortgage. It is not disputed that an antecedent debt is not a good consideration to entitle the defendants to protection as purchasers. But it is said that forbearance was the actual consideration that induced the giving of the mortgage.

It will not be necessary to consider whether forbearance alone is sufficient consideration to support the claim of a purchaser for value in equity, for the defendant has not established the existence of any such consideration.

The findings of the Referee in this respect are questioned. The Referee was in error in holding that parol evidence could not be introduced to prove an agreement to forbear. It appears from the Referee's report that the mortgage recited the antecedent debt as the sole ground of its being given, making no mention of forbearance.

The granting of forbearance is not at all inconsistent with the consideration stated, and might well have been attained by a separate contract, or stipulation or consent, in a pending cause or otherwise.

*Thomas* vs. *Croft* (2 Rich., 113,) permitted a party to show by parol a consideration to support a guaranty endorsed on a pre-existing bond without stating any consideration whatever. The consideration offered to be shown in that case was also forbearance. There, the legal effect of the guaranty itself was in question. Here, the validity of the mortgage is not in question. As far as the defendants' legal rights are concerned, they hold by undisputed title. The questions here are altogether as to substantial rights,

and not as to forms nor modes. The defendants allege that they have parted with value in an honest transaction, and ought not to be ensnared in the equities existing between parties wholly strangers to them. If such was the fact, the defendants were, in a Court of equity, entitled to show it by any means in their power.

But although this conclusion of the Referee was erroneous, it does not appear that the defendants were prejudiced by it. It does not appear that the defendants were actually prevented from placing on the record all the proofs in their possession on this point. The evidence shows no .exception on the ground of excluded evidence. The Referee's report does not state that written evidence was excluded, but purports to set forth the evidence which was objected to as inadmissible. We must consider that all the evidence offered by defendant is before us.

It is not pretended that the evidence shows an agreement to forbear for any specific period of time. It was necessary then to show an agreement to indulge the debtors generally, attended by actual forbearance for a reasonable time.—*Thomas* vs. *Croft*, 2 Rich., 113. We are satisfied that the evidence does not establish any agreement to forbear that would have prevented the defendants from proceeding at once to sue at law upon the promissory note which was due at the time the mortgage was given to secure it.

A portion of the exceptions taken to the Referee's report call in question the equities as existing between the plaintiffs and J. M. McCall; but the evidence does not present any ground for disturbing the findings of the Referee on this subject. The other exceptions, which are numerous, are substantially answered in the preceding.

As the exceptions are drawn out into much argumentative detail, it will not be possible to give them more detailed examination.

The appeal should be dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.